

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed April 4, 2019**                                    **United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 03-33479-BJH |
| | § | (Chapter 11) |
| RENAISSANCE RADIO, INC., | § | |
| | § | Related to ECF Nos. 273 & 274 |
| Debtor. | § | |

### MEMORANDUM OPINION DENYING MOTIONS TO REOPEN
### CASE AND TO RECONSIDER ORDER AND DENY CERTAIN CLAIMS

David A. Schum ("**Schum**"), a former stockholder, moved to reopen this case (the "**RRI Bankruptcy**") to reconsider the allowance of several claims on grounds of fraud, bad faith and fraud on the court.[1]  Schum relies on 11 U.S.C. §§ 350(b), 502(j)[2] and Federal Rules of Civil Procedure 60(b)(2), (b)(3) and (d)(3).[3]  Both Fortress Value Recovery Fund I LLC ("**Fortress**

---

[1]  ECF Nos. 273 (Motion to Reopen) and 274 (Motion to Reconsider Order and Deny Certain Claims) (together, the "**Motion**") were repeat filings of the same motion.  Also filed with the Motion are Schum's Brief in Support, ECF No. 275 ("**Schum's Brief**") and Schum's Appendix, ECF No. 276 ("**Schum's App.**").

[2]  Made applicable by Fed. R. Bankr. P. 3008.

[3]  As applicable by Fed. R. Bankr. P. 9024.

Value")[4] and Schulte Roth & Zabel LLP ("**Schulte**")[5] (together with Fortress Value, the "**Objectors**") oppose reopening the case.

Schum seeks to revisit claims addressed in a confirmed chapter 11 plan from a case closed over fourteen years ago, despite his numerous unsuccessful attempts to unwind the plan through appeals and other means. The basis for his challenge now is an argument he could have made – and in at least one forum, did make – challenging post-petition financing this court approved to successfully conclude the RRI Bankruptcy many years ago and remained undisturbed on appeal.

Even if Schum's arguments had merit as a matter of law – and they do not, being essentially frivolous – he urges them far too late for relief.[6]

**I.       Background**

    **A.  The RRI Bankruptcy Case**

Renaissance Radio, Inc. ("**RRI**") was formed in February 1997 to acquire Dallas/Ft. Worth area radio stations. Creditors of the failing enterprise filed an involuntary chapter 7 petition against it in 2003, but the case later converted to a chapter 11 reorganization that ended with a confirmed plan.[7] The confirmed plan provided for the transfer of all RRI's assets and operations to The Watch, Ltd., a Texas limited partnership, and its affiliate DFW Radio License, LLC, a Texas limited liability company (together with The Watch, Ltd. ("**The Watch**")). The Watch bought the assets with $6,500,000[8] in court-approved exit financing (the "**Exit Financing Facility**") arranged

---

[4] ECF No. 278 ("**Fortress Value Objection**").

[5] ECF No. 280 (Schulte's Joinder to the Fortress Value Objection). Schulte represented Zwirn throughout the RRI Bankruptcy.

[6] This memorandum opinion addresses all objections and affirmative defenses.

[7] ECF No. 141, and with certain amendments, ECF No. 148 (Second Amended Chapter 11 Plan) (the "**RRI Plan**"); *see also* ECF No. 192 (January 8, 2004 Order Confirming Second Amended Plan of Reorganization) (the "**RRI Confirmation Order**").

[8] RRI Plan, Ex. B.

by Bernard National Loan Investors, Ltd. ("**BNLI**")[9] as lender, and Highbridge/Zwirn Special Opportunities Fund, L.P. ("**Zwirn**"), its agent. A final decree closed the RRI Bankruptcy in August 2004, more than fourteen years before Schum filed the Motion. Schum personally guarantied (the "**Guaranty**")[10] the Exit Financing Facility, as RRI's confirmed plan required.[11]

### B. The Watch Bankruptcy

Less than two years after RRI's plan was confirmed, The Watch and DFW Radio License, LLC filed their own chapter 11 cases.[12] The court later authorized Zwirn's purchase of substantially all the two debtors' assets,[13] though Zwirn later assigned its purchase rights to Bernard Dallas, LLC ("**Bernard Dallas**"), an entity it formed to acquire the assets.

Schum repeatedly challenged this transaction through the courts. His actions included:

> 1/9/06: Schum appealed the sale approval order to the Northern District of Texas, District Court.[14] The appeal was dismissed for Schum's lack of standing.
>
> 7/12/06: Schum unsuccessfully moved for reconsideration, arguing that his proofs of claim filed in the bankruptcy cases gave him standing to appeal.[15]

---

[9] The financing agreement defined the *Lenders* as "the financial institutions from time to time" but was signed on behalf of Bernard National Loan Investors, Ltd. The closing documents bear the signatures of Schum, as president of DFW Radio, Inc. and general partner on behalf of The Watch; Daniel Zwirn, as managing principal of Zwirn; and Perry Guss, as director of BNLI. Schum's App. at 120-21 (financing agreement signature pages).

[10] Adversary No. 06-02345-BJH [ECF No. 2], Ex. D; *see also* RRI Plan, Ex. 1.31, p. 13.

[11] RRI Plan. Ex. 1.31, § 5.1(A)(i).

[12] Case Nos. 05-35874-BJH-11 (The Watch, Ltd.) and 05-35892-BJH-11 (DFW Radio License LLC) (collectively, "**The Watch Bankruptcy**") were filed May 26, 2005, and later ordered jointly administered. Citations to pleadings filed in these cases will be preceded with "The Watch Bankruptcy." All other citations will refer to pleadings filed in the RRI Bankruptcy unless otherwise noted.

[13] The Watch Bankruptcy, ECF No. 150.

[14] *See* Case No. 3:06-cv-00391-N.

[15] *See* Case No. 3:06-cv-00391-N, [ECF Nos. 21 and 26].

> 12/5/05: Schum appealed the dismissal order to the Fifth Circuit Court of Appeals, which dismissed the appeal as moot after Schum failed to obtain a stay pending appeal.[16]

When Schum did not succeed on appeal, he sought to stop the court-approved transactions by repeatedly refusing to sign documents necessary to close Zwirn's purchase. Interested parties filed six (6) motions to compel Schum to sign the documents transferring the FCC licenses and permits from the debtors to the purchaser.[17] The sixth and final order authorized Zwirn's counsel to sign the sale documents (the "**Sixth Compel Order**").[18] Schum appealed that order but this court denied his motion to stay the order pending appeal. The district court later dismissed the appeal as moot under 11 U.S.C. § 363(m) because there was no stay of the sale approval order and the sale at issue had already been consummated to a good-faith purchaser.[19] Schum unsuccessfully moved the district court to reconsider the order dismissing the appeal.[20] The Fifth Circuit eventually dismissed as moot Schum's appeal of the order denying his motion to reconsider.[21]

Nor did Schum confine his relentless efforts to block the transactions to the federal courts. Specifically, he unsuccessfully attacked the Federal Communications Commission's (the "**FCC**") approval of Bernard Dallas's May 2006 sale of the radio assets to a third-party purchaser, Principal Broadcasting,[22] and afterward petitioned the FCC to reconsider its approval of the assignment.

---

[16] *See* First Appeal [ECF No. 27] (Notice of Appeal), and *In Matter of The Watch Ltd.*, 257 F. App'x 748 (5th Cir. 2007).

[17] *See* The Watch Bankruptcy, [ECF Nos. 172 & 178; 191 & 193; 204 & 205; 208 & 214; 220 & 221; 232 & 238].

[18] *Id.* at ECF No. 238.

[19] The Watch Bankruptcy [ECF No. 259]; case no. 3:07-CV-0563-N, ECF No. 12 (District Court Order Dismissing Appeal as Moot); *and Schum, et al v. Zwirn Special Fund, et al,* case no. 08-10121 (Judgment entered 10/6/08 Dismissing Appeal as Moot).

[20] Case no. 3:07-CV-0563, [ECF No. 13] (Schum's Motion for Reconsideration); [ECF No. 17] (Order Denying Motion for Reconsideration).

[21] *See Schum, et al v. Zwirn Special Fund, et al,* case no. 08-10121; case no. 3:07-CV-0563, [ECF No. 18] (Notice of Appeal); and *In re Watch Ltd.*, 295 F. App'x 647, 650 (5th Cir. 2008).

[22] FCC Decision DA 06-2607.

**Memorandum Opinion**                                                                                                  4

Failing there as well, Schum sought review of the FCC letter decisions declining to reconsider the objections to the license assignments from DFW Radio License to Bernard Dallas, and from Bernard Dallas to Principle Broadcasting. Schum contended that the transaction was unlawful because the lenders had foreign ownership – the very same argument he now brings to this court. The FCC again rejected Schum's arguments.[23]

Schum then appealed the FCC's decision to the United States Court of Appeals for the District of Columbia Circuit.[24] When that failed, Schum unsuccessfully applied to the United States Supreme Court for a writ of certiorari,[25] then was denied a rehearing.[26]

At some point Zwirn sued Schum in state court to collect on the Guaranty[27] and another obligation. Schum counterclaimed, seeking to rescind the Guaranty based on "fraud" or "mutual mistake." The counterclaim was removed to this court[28] but was later remanded to state court. This court found that the Guaranty was integral to the RRI Plan and Schum's counterclaim impermissibly collaterally attacked its confirmation order.[29]

Schum has not shown cause to reopen the RRI Bankruptcy. Every challenge he now brings to this court was made years ago in other forums. His claims here are premised on the same facts he has possessed for years and the same theories federal courts and one federal agency already have considered and rejected.

---

[23] *See* DFW Radio License, LLC, 29 F.C.C. Rcd. at 810-11.

[24] *See In re: David Schum* 13-1041*; David Schum v. FCC* 14-1026*; David Schum v. FCC* 14-1027*;* and *David Schum v. FCC* 16-1376.

[25] *Schum v. F.C.C.*, 136 S. Ct. 1672, 194 L. Ed. 2d 781 (2016).

[26] *Schum v. F.C.C.*, 136 S. Ct. 2481, 195 L. Ed. 2d 815 (2016).

[27] The lawsuit was styled *D. B. Zwirn Special Opportunities Fund, L.P. v. David Schum*, Cause No. 05-05619 in the 116th District Court of Dallas County (the "**State Court Action**").

[28] The removed lawsuit was designated adversary no. 06-3277.

[29] Hr'g Tr. 11/2/06, Adversary No. 06-03456-BJH [ECF No. 28] at pp. 10-11 (Houser).

This memorandum opinion gives the reasons for denying Schum's Motion.

## II. Jurisdiction and Venue

The court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (L), (E) and (O).

## III. Legal Analysis

### A. No Basis Exists for Reopening the RRI Case Pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60

Federal Rule of Bankruptcy Procedure 9024 makes Fed. R. Civ. P. 60 applicable in bankruptcy cases. The rule permits reconsideration of a final judgment or order based on (i) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b), or (ii) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(2), (3). Rule 60(c) limits the period to seek relief under (b) to "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

#### 1. Schum's Claims Are Time-Barred

Schum argues that reopening the case is appropriate under Rule 60(b)(2) based on "newly discovered evidence" relating to BNLI, an offshore entity whose domicile was not disclosed when it provided the Exit Financing Facility. He contends this was a material misrepresentation that amounts to fraud within the meaning of Rule 60(b)(3), and that BNLI's role in the financing violated 47 U.S.C. § 310, which bars foreign ownership of broadcast licenses.[30] Schum also claims that he was the sole representative of debtor RRI with the authority to approve the exit financing arrangement but that he was "purposely and fraudulently never provided with the requisite

---

[30] *See generally* Schum's Brief, ECF No. 275.

information to make an informed decision."[31] Schum contends that he never would have agreed to allow Bernard Dallas to provide financing to conclude the RRI Bankruptcy had he known it was a foreign entity.

Schum admits he discovered this evidence in 2012 but claims to have waited to bring it to this based on advice he received from unnamed lawyers at a deposition[32] in the State Court Action.

Schum filed the Motion almost fifteen years after the chapter 11 case was closed and more importantly, nearly seven years after he discovered the allegedly new facts. Even giving credence to his claim of reliance on other lawyers in a separate legal proceeding, Schum cannot justify his inaction. Schum's delay in filing the Motion leaves him without a remedy under Rule 60(b)(2) and (3).

Even assuming, without finding, that Schum had been deceived and the Motion was timely filed, Rule 60(b) would give him no recourse. Contracting parties are generally not fiduciaries under Texas law and each party to a transaction must exercise due diligence and make its own inquiry of counterparties to a contract to protect its own interests.[33] Schum could have inquired into the entities' origin at any time before signing the exit financing loan documents: indeed, he *should* have done so because he personally guaranteed the undertaking. Nothing in the record suggests that Schum lacked the time or resources to review the loan documents before allowing RRI to agree to the exit financing transaction. The record rather reflects that he was represented

---

[31] *Id.* at ¶ 46.

[32] *See* Schum's Brief, at ¶ 39 (Schum claims that "[t]he attorneys that participated in the bankruptcy proceeding advised Schum to finish with the FCC process prior to bringing this motion before the bankruptcy Court. Schum did just that, a process that took from February 23, 2006 until May 29, 2018…"). *See also* Schum App., Ex. E (excerpt from 12/21/12 deposition).

[33] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997) (requiring more than a contractual agreement—the relationship must exist prior to, and apart from, the agreement made the basis of the suit); *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968) ("As a party to arm's length business transactions, respondent had a duty to use ordinary care for the protection of its own interests.").

by counsel and did not face pressures unusual or uncommon in a typical chapter 11 case. Nothing Schum has offered supports the conclusion that either Zwirn or Bernard Dallas prevented Schum from learning any relevant information about the entities.

Schum's allegations of coercion to sign the documents on the day of the closing are unwarranted and do not merit relief under Rule 60(b)(2) or (3).

2. **Nothing in the Record Supports a Finding that any Party Engaged in Fraud on the Court Warranting Relief Under Rule 60(d)**

To avoid the one-year limitation for relief under Rule 60(b), Schum also argues for reconsideration pursuant to Rule 60(d)(3), to "set aside the judgment for fraud on the court." In contrast to a claim for relief under Rule 60(b)(3), Rule 60(d)(3) allows courts to "set aside a judgment for fraud on the court" without a strict time limitation.[34] Because the rule does not bar challenges to orders and judgments based on timeliness of the request, its standard for proving that an order should be set aside for "fraud on the court" is much more demanding:[35] "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."[36] Claims for relief on this ground must be supported by clear and convincing evidence.[37] Schum's purportedly new evidence does not satisfy Rule 60(d)(3).

Schum argues that the orders allowing and providing for payment of the claims of the Objectors should be set aside pursuant to Rule 60(d)(3). He alleges that BNLI defrauded both him

---

[34] *See* Fed. R. Civ. P. 60(c)(1); *see also Jackson v. Thaler*, 348 F. App'x. 29, 34 (5th Cir.2009) (*per curiam*).

[35] *Dailey v. United States*, 2010 WL 4683824, at *2 (E.D. Tex. Nov. 10, 2010).

[36] *Jackson*, 348 F. App'x. at 34 (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.), *reh'g denied*, 578 F.2d 871 (5th Cir.1978)).

[37] *Wooderts v. Warden, Fed. Corr. Inst. Seagoville*, 516 F. App'x 370, 371 (5th Cir. 2013) (clear and convincing evidence); (*see also Galatolo v. United States*, 394 F. App'x 670, 672 (11th Cir. 2010) ("Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud.").

and the court because it (i) fraudulently concealed that it was an offshore entity that 47 U.S.C. § 310(b) barred from participating in the exit financing transaction and subsequent sale; and (ii) fraudulently induced Schum into signing the loan documents on RRI's behalf. Schum explained at the hearing on his Motion that he never would have agreed to the loan had he known that Bernard was not a domestic entity.[38]

First, the record Schum made does not demonstrate any egregious misconduct, an unconscionable plan or scheme to improperly influence the court, or an attempt to mislead it. This court approved the financing and confirmed the RRI Plan based on the FCC's approval of the transfer of licenses to The Watch. Schum's claim that Zwirn "decided to go the fraud route" and used an "illegal lender" – urged before in several forums and again to the FCC – is conclusory; no facts support it.[39] "Fraud on the court … is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury."[40] This court specifically found that the "FCC has approved the transfer of the licenses and construction permits, as applicable, by the Debtor to The Watch, Ltd., per the requirements of the Plan."[41] The FCC approved the assignments and transfers of the licenses as the confirmed RRI Plan and Exit Financing Facility contemplated; it found no basis for revisiting its decision.[42] No evidence

---

[38] Hr'g Audio Tr. 2/20/19 at 2:54:08. In any event the court does not concede that BNLI was or is an "offshore entity" for any purpose under applicable law.

[39] *Id.* at ¶ 45.

[40] *See Breitling v. LNV Corp.*, 2015 WL 5896131, at *7 (N.D. Tex. Oct. 5, 2015).

[41] Findings of Fact and Conclusions of Law Regarding Confirmation of Second Amended Plan of Reorganization [ECF No. 185] at ¶ 13. *See also* Confirmation Order at p. 2 (("ORDERED that *since the FCC approved the transfer* of the applicable construction permits to The WATCH, Ltd., as provided for in the Plan . . .") (emphasis added).

[42] Hr'g Audio Tr. 2/20/19 at 2:51:15-32 (Schum) (Schum acknowledging that he pursued a complaint challenging the role of the non-American lender (BNLI) through the FCC, but "there was nothing that they [the FCC] would do about it.").

supports a finding that the FCC's approval, which was essential to the two challenged transactions, was erroneous or based on fraud.

Fortress Value correctly points out that the statute addresses only the nationality of the entity that held the FCC licenses (DFW Radio License) and *not* the lender (BNLI). Schum points to no law or jurisprudence suggesting otherwise. Because DFW Radio License was a *Texas* corporation,[43] 47 U.S.C. §310(b) was inapplicable.

This court specifically found that each of the necessary pre-conditions required for the Exit Financing Facility were met, including FCC approval to transfer the licenses and construction permits pursuant to the plan.[44]

In sum, Schum's contentions even if proven do not rise to the level of "fraud on the court" under Rule 60(d)(3).

3. **Schum's Other Grounds to Revisit Prior Rulings Have no Basis in Law.**

Schum seeks relief this court cannot grant because it cannot review the FCC's decisions relating to transfer of the licenses.[45] "Congress assigned to the Federal Communications Commission ... exclusive authority to grant licenses"[46] under the Federal Communications Act, and required the FCC "to serve as the single Government agency with unified jurisdiction and regulatory power over all forms of electrical communication, whether by telephone, telegraph,

---

[43] RRI Plan, at p. 2; *see also* [ECF No. 149] (RRI Disclosure Statement) at p. 2.

[44] *Id.* at Article IV, § 4.01(h) (requiring consents, authorizations and approvals of any governmental authority); Article V, § 5.01(c)(iv) (requiring prior FCC approval for consummation of any assignments or transfers of control of FCC authorizations).

[45] *In re F.C.C.*, 217 F.3d 125, 135 (2d Cir. 2000) (concluding the bankruptcy court lacked authority to review the FCC decision and stating, "whenever an FCC decision implicates its exclusive power to dictate the terms and conditions of licensure, the decision is regulatory. And if the decision is regulatory, it may not be altered or impeded by any court lacking jurisdiction to review it.").

[46] *Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 553, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990), *overruled on other grounds, Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).

cable, or radio."[47]  Schum's challenge to its decision failed both at the agency and on appeal.  The FCC had sole authority to approve the transfer of the licenses and Schum offers no basis in law or in fact for reconsidering its approval, even if this court had jurisdiction to do so.

Principals of claim and issue preclusion also bar reopening the case.  Whereas "claim preclusion" prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, could have been litigated in the prior action,[48] issue preclusion prevents relitigation of specific issues already resolved in a prior action.[49]  The test for issue preclusion requires proof of four elements:

> (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair.[50]

Fundamentally, Schum is attempting to collaterally attack prior orders and raises issues actually litigated years ago.  He repeats arguments he made in past actions and appeals that were fully litigated in this court, the district court, the state court and the FCC.  For example, Schum's petition to the FCC sought to deny Zwirn's application for assignment of the licenses premised on identical allegations currently before the court, including arguments that BNLI failed to disclose information about Zwirn's ownership structure allegedly violating 47 U.S.C. § 310 (a-b).[51]  The FCC rejected this argument as speculative, approved the assignment of licenses to Zwirn,[52] and

---

[47] *United States v. Sw. Cable Co.*, 392 U.S. 157, 168, 88 S. Ct. 1994, 2000, 20 L. Ed. 2d 1001 (1968*)* (internal quotation marks and footnotes omitted).

[48] *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992).

[49] *Id.*

[50] *United States v. Shanbaum*,10 F.3d 305, 311 (5th Cir. 1994).

[51] *See* The Watch Bankruptcy, ECF 276 at Ex. C (FCC's December 28, 2006 decision denying Schum's petition and approving the assignment of licenses to Zwirn).

[52] *Id.*

later denied Schum's second petition.[53] Similarly, Schum sought to rescind the Guaranty as the result of "fraud" or "mutual mistake" in the State Court Action. His counterclaims were removed to this court but remanded to state court, which resulted in dismissal of Schum's claims and final judgment in favor of Zwirn.[54] Each of Schum's appeals and challenges repeated the same arguments that were already denied or dismissed on a final basis.

### B. There Were No Ethical Violations

Schum asserts Schulte attorneys violated Texas Disciplinary Rules of Professional Conduct Rules 3.03 or 8.04,[55] which prohibit false statements to tribunals and lawyers' dishonest conduct. However, no evidence supports Schum's conclusory allegations of misconduct by opposing counsel. Regardless, BNLI's domicile was immaterial to the financing transaction and did not necessitate disclosure contemplated by the rules.

### C. There Is No "Cause" Under § 350(b) or §502(j) to Reopen the RRI Bankruptcy

Schum argues for reopening of this case[56] for several purposes, among them reconsidering and denying Zwirn, BNLI and Shultz's allowed claims and undoing plan payments in connection with the Exit Financing Facility.[57] Schum has not established a basis for reopening this long-closed reorganization.

---

[53] *Id.* at Ex. D (Schum's Second Petition to the FCC).

[54] *See* The Watch Bankruptcy [ECF No. 276] Ex. B (findings of fact and conclusions of law entered in the State Court Action, finding, among other things, (1) Schum owed Zwirn $10,754,451.45 under the exit financing agreement and (2) Schum had "no valid defense, offset, claim, or counterclaim that [would] reduce the amounts" owed.).

[55] *See* Schum's Brief, ¶ 53 (arguing counsel violated Rule 3.03(5) [sic], 3.03(b), (c) and Rule 8.04).

[56] *See e.g.*, Motion at 3 of 8.

[57] *Id.*

1. **Schum Failed to Establish Cause Pursuant to § 350(b)**

Schum contends that 11 U.S.C. § 350(b) gives this court discretion to reopen his case "to accord relief to the debtor, or for other cause"[58] without regard to time elapsed since a case was closed. *See also* Fed. R. Bankr. P. 5010. He contends that once the case is reopened, 11 U.S.C. § 502(j) permits reconsidering a claim that has been allowed or disallowed "for cause" – once again, subject to no time limit. *See also* Fed. R. Bankr. P. 3008.

Bankruptcy Code section 350(b) allows reopening of closed cases to administer assets, to provide relief to the debtor, "or for other cause." 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. Schum has the burden of establishing cause to reopen the case.[59]

"In this context, the phrase 'other cause' gives the bankruptcy court 'discretion to reopen a closed estate or proceeding when cause for such reopening has been shown.'" *In re Bell Family Trust*, 575 F. App'x 229, 232 (5th Cir. 2014) (quoting *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings." *Id.* Courts have developed a non-exclusive list of factors to consider in determining whether cause exists to reopen a case but a principal factor is the length of time between the estate's closing and the motion to reopen.[60] The longer the time between closing of a bankruptcy case and a request to reopen it, the greater the

---

[58] Motion at ¶ 33.

[59] *In re Dudley*, 230 B.R. 96, 98 (Bankr. N.D. Tex. 1999).

[60] *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962) (the time for reopening an estate should be of "crucial significance" to the bankruptcy court.).

showing to establish cause for reopening.[61] Even then, courts will reopen a closed case only on a demonstration of compelling circumstances.[62]

Assuming, without finding, that Schum was a party in interest, he failed to establish cause to reopen the RRI Bankruptcy as 11 U.S.C. § 350(b) requires and so is not entitled to relief. Schum explains that he delayed filing the Motion on advice of opposing counsel who suggested that he wait until he had concluded litigation challenging the FCC's approval of the license transfers.[63] Even suspending disbelief in the plausibility of that claim and setting aside the wisdom of relying on opposing counsel for legal advice, Schum's delay in moving to reopen the RRI Bankruptcy is inexcusable. Schum with reasonable diligence could have discovered and brought to the court long before 2018 all the facts supporting his spurious claim that BNLI's domicile prevented it from participating in the exit financing transaction. Schum asks for relief now, fourteen years after the RRI Plan was consummated and all parties' claims were paid to the extent the plan provided, and six years after he admits learning the facts on which he premises his request. His allegations are as implausible as the relief he seeks is impractical. Schum has not proven cause to reopen the case.

2. **There Is No Cause Pursuant to 11 U.S.C. § 502(j) to Reconsider the Claims**

Nor has Schum made out a case for revisiting the allowance and payment of the claims of Zwirn/Fortress Value, BNLI and Schulte for pre-paid fees and legal fees in connection with the Exit Financing Facility.

---

[61] *Traub v. Marshall Field & Co.*, 182 F. 622, 624-25 (5th Cir. 1910); *In re Double J Operating Co., Inc.*, 37 F. App'x 91, *1 n.4 (5th Cir. 2002) (citing *Batstone v. Emmerling* (*In re Emmerling*), 223 B.R. 860, 864-69 (B.A.P. 2d Cir. 1997)).

[62] *In re Johnson*, 2018 WL 4955235, at *2 (S.D. Tex. Oct. 11, 2018) (citing *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962)).

[63] *See* Schum's Brief, ¶ 39; Schum's App., Ex. E.

Bankruptcy Code section 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause."[64] Bankruptcy Rule 3008 implements this Code section, providing that a "party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate."[65] If the "Rule 3008 motion is brought after the expiration of the 10 day period in Rules 9023 and 8002(a), Rule 9024 (applying Rule 60 of the Federal Rules of Civil Procedure) will guide the 'for cause' standard."[66] If the court finds there is a basis to reconsider under Rule 60, then section 502(j) and Rule 3008 allow "great discretion in reconsidering the allowance or disallowance of claims"[67] but should not encourage parties to avoid the usual rules for finality of contested matters.[68]

Factors militating against reopening the RRI Bankruptcy pursuant to Rule 60 also support denying reconsideration of the allowance and payment of Schulte's and Zwirn's claims. Schum failed to establish any basis for reconsidering claims allowed and paid through a plan confirmed almost fifteen years ago; or to persuasively explain the delay of more than six years in presenting his claim of alleged fraud on this court. As set forth in § III.A.1, *supra*, in addition to Schum's inability to justify cogently his proposal to disturb the finality of the claims determination process, it is clear that Schum is not entitled to relief under 11 U.S.C. § 502(j).[69]

---

[64] 11 U.S.C. § 502(j).

[65] Fed. R. Bankr. P. 3008

[66] *In re Pride Companies, L.P.*, 285 B.R. 366, 369 (Bankr. N.D. Tex. 2002).

[67] *Id.*

[68] *Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987).

[69] *See also In re Wilkinson*, 457 B.R. 530, 540 (Bankr. W.D. Tex. 2011) ("The court reads section 502(j) and its 'cause' standard to require a movant to first establish some reason for disturbing the finality of the claims determination process…") (internal citations omitted).

D. **The Motion is Equitably Moot**

In further alternative, the doctrine of equitable mootness supports denial of Schum's Motion.

Courts may decline appellate review of a chapter 11 plan when a reorganization has progressed too far for the requested relief to be granted practicably.[70] Equitable mootness also applies to a bankruptcy court's consideration of a motion to revoke a plan confirmation order.[71] The Fifth Circuit will consider three factors to decide whether a motion is equitably moot: "(i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan."[72] Of these, the third factor represents the ultimate inquiry.[73] All three of the elements of equitable mootness are satisfied here.

Schum has not obtained a stay of the RRI Plan, which has been *completely* consummated and the case closed. Nothing remains to be done to carry out the terms of the confirmed plan.[74] Finally, an order confirming a chapter 11 plan cannot be partially revoked. The RRI Plan and RRI Confirmation Order set February 12, 2004 as the final date to object to claims[75] and also provided

---

[70] *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010).

[71] *In re CTLI, LLC*, 534 B.R. 895, 909 (Bankr. S.D. Tex. 2015) (denying a motion to revoke a plan confirmation order under section 1144 as equitably moot); *In re Delta Air Lines, Inc.*, 386 B.R. 518, 537 (Bankr. S.D.N.Y. 2008) (equitable mootness applies to proceedings under section 1144); *The Nancy Sue Davis Tr. v. Davis Petroleum* Corp., 402 B.R. 203, 208 (S.D. Tex. 2009) (dismissing an appeal as equitably moot that sought to revoke a confirmation order on ground that it had been procured by fraud).

[72] *Id.* (citing *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994)).

[73] *The Nancy Sue Davis Trust v. Davis Petroleum Corp.*, 402 B.R. 203 (S.D. Tex. 2009).

[74] *Blast Energy Servs.*, 593 F.3d at 425 (substantial consummation occurs when the debtor "ha[s] either paid or arranged for payment of all of its creditors.").

[75] RRI Plan, ¶¶ 1.19, 1.28 (defining *Claim Objection Bar Date* as the 20th day after the Effective Date; and defining *Effective Date* as the "next business day after the tenth day following the Confirmation Date." The Confirmation Date was January 12, 2004.

for RRI's payment of attorney fees and other charges in connection with the Exit Financing Facility.[76] They bar Schum's untimely challenge to the Objectors' claims.

### E. The RRI Confirmation Order Cannot Be Revoked Pursuant to § 1144

Schum insists that he is not trying to revoke the RRI Confirmation Order but instead only seeks to reopen the case to challenge the interest, loan, and attorneys' fees paid in connection with the Exit Financing Facility. But stripped of artifice his Motion is plainly an attack on the order confirming the RRI plan, which deemed the contested orders allowed, rather than a challenge to claims allowance orders. Schum's challenge is long since barred by 11 U.S.C. § 1144.

Bankruptcy Code section 1144 establishes a 180-day deadline after the date of entry to move to revoke an order confirming a chapter 11 plan, and then only if the order confirming the plan was procured by fraud.[77] Congress was familiar with the chain of events that take place after a chapter 11 plan is confirmed and so provided that "only fraud would warrant an attempt to 'unscramble the egg,' and even then only within the 180–day time frame imposed by § 1144."[78] Schum's artful attempt in the Motion and at argument to circumvent § 1144's time limit is "a futile effort to put the non-existent scrambled egg back in the shell."[79]

Schum did not object to confirmation in the RRI Bankruptcy nor did he cause RRI to object to Schulte's or Zwirn's claims before the claim objection bar date.[80] As a result, their claims were

---

[76] *See* RRI Plan [ECF No. 148] Ex. 1.31, § 11.04; RRI Confirmation Order [ECF No. 192] (collectively providing for RRI's payment of attorneys' fees, costs and legal expenses incurred by Zwirn).

[77] 11 U.S.C. § 1144.

[78] *In re Logan Place Properties, Ltd.*, 327 B.R. 811, 812 (Bankr. S.D. Tex. 2005) (quoting *In re Winom Tool and Die, Inc.*, 173 B.R. 613, 616 (Bankr. E.D. Mich. 1994)).

[79] *In re Canal St. Ltd. P'ship*, 269 B.R. 375, 381 (B.A.P. 8th Cir. 2001) (referring to a substantially consummated chapter 11 plan).

[80] *See* RRI Plan [ECF No. 148]; Confirmation Order [ECF No. 192] (requiring all claim objections to be filed on or before February 12, 2004).

deemed allowed and provided for in the confirmed plan. Schum cannot now pursue his claim objections without unwinding the confirmed plan and nullifying the "binding contract" among the parties to the reorganization.[81]

### F. This Court Lacks Authority to Appoint Special Masters.

Finally, Schum suggests the court appoint a special master to determine whether there has been fraud upon the court.[82] Pretermitting the propriety of a court's delegating that issue, Federal Rule of Bankruptcy Procedure 9031 makes inapplicable in bankruptcy cases Federal Rule of Civil Procedure 53, which governs the appointment and duties of special masters.[83] This court has no power to appoint a special master.[84]

### IV. Conclusion

RRI's confirmed plan bound all parties whose claims and interests it addressed, including Schum. The RRI Bankruptcy and its successor's bankruptcy were fully consummated and closed years ago. Even if Schum's claims had merit – which they lack – Schum inexcusably tarried in pursuing relief after 2012, when he claims to have first obtained information supporting the theory underlying his latest attack on the RRI reorganization.

Because Schum has established no basis for reopening the RRI Bankruptcy or reconsider the Objectors' claims, his Motion will be denied.

---

[81] *Christopher v. Am. Universal Ins. Group* (*In re Christopher*), 148 B.R. 832, 837 (Bankr. N.D. Tex. 1992) ("A strong policy favors enforcement of the plan of reorganization because too many rights of too many interests have relied on the finality of the confirmation order…. Once the plan is confirmed, the property rights of many of these interests are adjusted thereby creating a new status which is important to preserve."), *aff'd*, 28 F.3d 512 (5th Cir.1994); *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417 (3d Cir.1988) ("A strong interest to achieve finality pervades Chapter 11 arrangements.") (citation omitted), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

[82] Schum's Brief in Support, ¶ 60.

[83] *See* Fed. R. Bankr. P. 9031 ("Rule 53 F.R.Civ. P. does not apply in cases under the Code.").

[84] The Bankruptcy Code also prohibits appointing receivers in bankruptcy cases. 11 U.S.C. § 105(b).

Counsel for Fortress Value is directed to prepare a form of order and upload it within 14 days of entry of this Memorandum Opinion.

# # # **END OF MEMORANDUM OPINION** # # #